IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVE KUITHE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0458-WS-C |
| | ) |
| GULF CARIBE MARITIME, INC., | ) |
| | ) |
| Defendant. | ) |

# ORDER

This matter is before the Court on the defendant's three motions to exclude expert testimony. (Docs. 105-07). The motions are based on Rule 26, Rule 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The parties have filed briefs in support of their respective positions, (Docs. 115, 118, 123), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court renders this opinion.

## DISCUSSION

"Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). There are thus three discrete inquiries: qualifications, relevance, and reliability.[1] The burden of establishing these three

---

[1] *See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (although there is "some overlap" among these inquiries, they "are

requisites lies with the proponent.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).[2]

An expert may be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand.  *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (an economic expert was qualified even though he "ha[d] no real estate development experience and thus no basis to opine regarding how the pilfered funds would have been invested by the Plaintiffs"); *id*. at 669 (expert knowledgeable concerning the practices of Mexican immigration authorities generally was qualified to testify even though he had no experience with Monterey officials in particular).

To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue."  The evidence must "concern matters that are beyond the understanding of the average lay person. ... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  *United States v. Frazier*, 387 F.3d at 1262-63.  In addition, the expert evidence "must have a valid scientific connection to the disputed facts in the case."  *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1312 (11th Cir. 1999).  That is, there must be an adequate "fit" between the evidence and the case, which may be lacking, for example, when the expert attempts to extrapolate animal studies into the human sphere.  *Rider v. Sandoz Pharmaceuticals Corp*., 295 F.3d 1194, 1202 (11th Cir. 2002).

---

distinct concepts that courts and litigants must take care not to conflate").

[2]Expert testimony must also satisfy other applicable rules of evidence, including Rules 401, 402 and 403.  *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1309 (11th Cir. 1999).

The most heavily litigated component of the *Daubert* analysis is reliability. Expert testimony "must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning more than subjective belief or unsupported assumptions." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Daubert* identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific community. 509 U.S. at 593-94. "Notably, ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Among such factors, "[i]n evaluating the reliability of an expert's method, ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison*, 184 F.3d at 1312 (internal quotes omitted). It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet Technology*, 326 F.3d at 1341. Thus, for example, "a district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or

other prior instances of untruthfulness." *Rink*, 400 F.3d at 1293 n.7.

There is a "'liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony.'" *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Daubert*, 509 U.S. at 588). "Those barriers are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury." *Id.* (internal quotes omitted). "There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Id.* at 1269.

The defendant has requested a *Daubert* hearing, a decision committed to the Court's sound discretion. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). "As we have explained previously, *Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id.* (internal quotes omitted). For example, "[a] district court should conduct a *Daubert* inquiry when the opposing party's motion for a hearing is supported by conflicting medical literature and expert testimony." *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Although there are multiple expert witnesses in this case, their testimony is not particularly complicated, and the defendant relies on no contrary expert testimony to support its *Daubert* motion. Accordingly, the Court declines to hold a hearing.[3]

Pursuant to Rule 26, the plaintiff's three experts submitted expert reports. "The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons therefor ..." Rule 26(a)(2)(B)(i). According to the advisory committee notes, under Rule 26 a retained expert "must prepare a detailed and complete

---

[3]The Court also declines the defendant's request to schedule oral argument. Local Rule 7.3.

written report" which must "set forth the substance of the direct examination."[4]

Rule 37 provides in pertinent part as follows: "A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). The court "may impose other appropriate sanctions," either "[i]n addition to or in lieu of this sanction." *Id*. The burden is on the nondisclosing party to demonstrate either that its failure to disclose was substantially justified or that the failure is harmless.[5] This determination is left to the broad discretion of the lower court.[6] Similarly, the determination whether to exclude the non-disclosed information or to select a different sanction is left to the discretion of the lower court.[7]

---

[4]*See, e.g., Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (no abuse of discretion in excluding testimony from experts whose reports merely recited the general subject matter of their expected testimony and did not provide "sufficient specificity to allow [the opponent] to prepare for rebuttal or cross-examination"); *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) (expert's affidavit that "provides no meaningful analysis of how and why [the defendant's] actions breached the standard of care [as the expert opined]" did not satisfy Rule 26); *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (no abuse of discretion in excluding declaration of an expert witness for whom no expert report was ever provided, because "compliance with the requirements of Rule 26 is not merely aspirational").

[5]*E.g., Roberts ex rel. Johnson v. Galen, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citing Fifth and Seventh Circuit cases); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing a First Circuit case); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *accord Morrison v. Mann*, 271 Fed. Appx. 841, 845 (11th Cir. 2008).

[6]*E.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002); *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *accord Morrison*, 271 Fed. Appx. at 845.

[7]*E.g., Roberts,* 325 F.3d at 783-84; *Trost v. Trek Bicycle*, 162 F.3d 1004, 1009 (8th Cir. 1998); *accord Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004). Indeed,

"The alternative sanctions [to exclusion] referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (emphasis in original). Thus, "absent some unusual extenuating circumstances not present here, the appropriate sanction when a party fails to provide certain evidence to the opposing party as required in the discovery rules is preclusion of that evidence from the trial." *Klonoski v. Mahlab*, 156 F.3d 255, 271 (1st Cir. 1998).

**I. Robert Borison.**

Borison's report describes him as a safety consultant. In his opinion, the plaintiff's fall was caused by three deficiencies with the ladder the plaintiff used to exit the barge: (1) its entrance was blocked by a containment box; (2) it had no vertical stringers for the plaintiff to grasp while beginning his descent; and (3) its rungs were only three inches from the shell of the barge. (Doc. 118, Exhibit 4).

The defendant first questions Borison's qualifications to render this opinion. (Doc. 115 at 4). The report reflects that Borison worked as a safety supervisor for Amerada Hess, where his job duties included inspecting all ladders, stairs and landings at all production platforms and facilities, including work vessels and barges. Borison later worked as a safety professional for J. Ray McDermott and McDermott International, where he was again responsible for inspecting all ladders, stairs and landings on all his employer's vessels, including barges. In his present occupation as a safety consultant, Borison has been involved in the fabrication and/or inspection of various ladders, stairways and landings at many sites, including work vessels and barges. He has evaluated ladders, stairways and landings for the United Stated Department of Energy and has overseen construction of ladders at oil storage facilities. There is no doubt that

---

"we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti*, 259 F.3d at 1106.

Borison has a wealth of experience concerning the safety of stationary work ladders, including on barges and other vessels.

The defendant objects that Borison has no demonstrated experience or expertise specifically with respect to the construction and inspection of unmanned cargo barges like the one at issue here, has never worked aboard a vessel as a chief engineer, and has never worked as a marine surveyor or naval architect.  (Doc. 115 at 4).  As noted above, however, to be an expert a witness need not have every type of experience that might be useful in the formulation of opinions, nor experience with the precise situation involved.  That is especially true here, where the defendant has not explained how the absence of such particularized experience could disqualify him from rendering opinions.  To the extent Borison is unfamiliar with the standards for the construction and inspection of unmanned barges (the content and significance of which the defendant does not identify), his ignorance goes to the weight of his testimony, not its admissibility.

Borison's report states that he used a job safety analysis (usually employed before an accident) and a root cause analysis (used after an accident).  The defendant complains that the report asserts these analyses are "widely recognized and accepted accident investigation analysis principles and methods employed in the safety profession" but does not specifically identify any "root cause guidelines."  (Doc. 115 at 6).  There appears to be nothing intricate about this analysis, which the report indicates consists mainly of reviewing a long checklist of potential causes of an accident to isolate those that contributed to the subject accident.  Nor is the term "root cause analysis" so obscure that the defendant could not determine its general meaning from other sources.  Almost 50 federal cases have used the term in the past three years alone, and a quick Google search locates 675,000 hits for the phrase.  The defendant cites no authority for the proposition that an expert report must define and explain terms in such common usage.

The report lists a number of potential categories of causes of an accident (any accident), including violation of  "federal and/or state standards/industry standards,

industry safety manuals and publications." Echoing its previous objection, the defendant argues that the report fails to identify any specific standard on which Borison relied. (Doc. 115 at 6). The short answer to this argument is that Borison in his report does not rely on any such materials, other than the Coast Guard circular and related ASTM standard which the report explicitly references. His opinions at trial will be so limited.

The defendant next asserts that the report "does not provide proper indication of the grounds for opinion." (Doc. 115 at 1). But the report expressly concludes that the absence of vertical stringers extending at least 33" above the landing, and at least 6" clearance of the rungs from the barge's shell, contradicted the Coast Guard circular and the ASTM standard, which recommend such measurements. The absence of stringers prevented the plaintiff from holding on to the ladder with his hands as he began his descent, and the shallow rungs allowed his foot to slip off the rung when his knee failed. The defendant does not explain how the report fails to provide the required information concerning these causes of the accident.

The situation is different with respect to the containment box. The report states that the containment box blocked all but 4.5" of the ladder, and it concludes that the ladder should not have been so blocked and that the blockage was a direct cause of the accident. However, the report does not provide the "basis and reasons" for Borison's conclusions as to either impropriety or causation with respect to the containment box. To this extent, the report violates Rule 26(a). The plaintiff, who has ignored the Rule 26 aspect of the defendant's motion, has not attempted to carry his burden of showing that the deficiency in the report was either substantially justified or harmless. Moreover, because the plaintiff has not offered any reason to impose a lesser sanction, Borison will be precluded from opining that the positioning of the containment box was improper or that it contributed to the accident.[8]

---

[8]This ruling does not preclude Borison from testifying, as a lay witness, to facts such as the 4.5" figure. That the defendant's expert believes the correct figure is 16"

The defendant questions whether the Coast Guard circular and ASTM standard directly apply to unmanned barges and whether, if they do, they carry the force of affirmative regulation. (Doc. 115 at 5-6).[9] The defendant does not explain why an expert cannot properly rely on such documents even if they do not by their terms apply to the precise situation presented and even if they are not legally binding. It is not uncommon for experts to extrapolate existing rules and recommendations to similar, technically uncovered situations. Absent support for its position, which the defendant does not provide, the Court must conclude that its objections go only to the weight to be afforded Borison's testimony.[10]

Finally, the defendant argues that Borison's report is impermissibly conclusory because it fails to "connec[t] the data he relied on with the vessel." (Doc. 115 at 7-8). This appears to be another effort to show that the Coast Guard circular and ASTM standard, which supply the dimensions on which Borison relied, do not apply to unmanned barges. As noted above, that argument fails. To the extent the defendant intended to articulate a different argument, it failed to do so effectively .

## II. Gerald George.

---

rather than 4.5", (Doc. 115 at 6), does not render Borison's lay testimony as to his measurement inadmissible.

[9] The defendant apparently maintains that only American Bureau of Shipping and/or Coast Guard standards apply. (Doc. 105, ¶¶ 6-7).

[10] Similarly, the defendant has failed to show that Borison is precluded from offering an opinion that the circular and ASTM standard directly apply to the subject barge. (Doc. 115 at 5). While "an expert witness may not testify as to his opinion regarding ultimate legal conclusions," *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009), whether these documents apply to the barge is not an ultimate legal conclusion (such as whether the defendant is liable) but a preliminary determination concerning the weight the Court should afford certain evidence. The defendant offers no authority for the unlikely proposition that an expert is not entitled to have or express an opinion as to whether the sources on which he relies are authoritative.

George's report describes him as an expert in kinesiology and biomechanics.  In his opinion, the design constraints of the ladder rendered it unsafe for ordinary use and exposed deckhands such as the plaintiff to an unreasonable risk of injury.  It is also his opinion that the plaintiff's knee injury directly resulted from having to negotiate the initial descent of the ladder in an awkward manner, due to its design constraints.  (Doc. 118, Exhibit 5).

The defendant first objects that George's opinion that the ladder posed an unreasonable risk of injury should be excluded as conclusory.  (Doc. 115 at 8).  The report, however, provides substantial detail concerning the basis of this opinion and is anything but conclusory.  It appears the defendant may have intended to argue that the opinion improperly invades the province of the factfinder, but "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704(a).

The defendant next argues that George provides no proper basis for his opinion that the plaintiff was injured because the configuration of the ladder required him to begin his descent in an awkward manner.  (Doc. 115 at 9).  In particular, the defendant denies a proper basis for George's conclusion that the plaintiff's knee was injured when it was subjected to a transverse rotation while fully extended or nearly so.  As the report states, the plaintiff's version of how he approached the ladder and began his descent would have placed his left foot on the second rung, with his knee almost fully extended at an approximate 45-degree angle to the rung, his toe touching the barge's shell, and his body also angled relative to the ladder.  This would have required the plaintiff to square up his body to get his right leg on the ladder, which exposed the left knee to transverse rotation, a movement that an extended knee is not designed to undergo.[11]  This is an extensive and completely satisfactory explanation for George's opinion.  The defendant correctly points

---

[11]Consistent with George's opinion, the plaintiff maintains that he felt a pop and immediate pain in his left knee as he began to extend his left leg and square his body.

out that George is not an orthopedic physician, (*id*.), but it has not explained why a biomechanical expert — which the defendant has conceded by silence George to be — is unqualified to draw the conclusion he has drawn.[12]

The defendant next argues that George's testimony should be excluded because he relied on the opinions of Borison. (Doc. 115 at 9-10). "Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not." *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985). Most of the references to Borison in George's report, however, are to factual material, not opinions, so they are not captured by this rule. The only Borison opinions appearing in George's report are that there should be vertical stringers extending 33" or more from the landing and that there should be 6"-8" depth between the rungs and the barge's shell. George's opinions, however, do not depend on these opinions of Borison; instead, George cites them only to accentuate his own testimony that, given the absence of stringers and a deeper gap between rungs and shell (and the obstruction of a containment box), persons employing the ladder were required to begin their descent at an awkward angle capable of resulting in injury.

As its fourth argument, the defendant asserts that George's opinions should be excluded to the extent Borison's opinions are excluded. (Doc. 115 at 10-11). This argument depends on the premise that George's opinions impermissibly depend on Borison's opinions and, as explained above, they do not.

Finally, the defendant argues that George's testimony should be excluded as cumulative under Rule 403. The defendant does not explain how the testimony of a biomechanical expert as to the physical movements and forces at work on a human body in causing an injury could be cumulative to the testimony of a safety expert as to the

---

[12]It may be that the defendant intended to argue that the injury arising from the transverse rotation described by George is not the injury for which the plaintiff brings suit. If so, the defendant has not explained or supported any such position, and the Court will not attempt to do so on the defendant's behalf.

deficient physical characteristics of the vessel that gave rise to those movements. To the extent that George's opinion that the ladder was unsafe for ordinary use and exposed the plaintiff to an unreasonable risk of injury may be repetitive with Borison's opinion (a question the defendant does not address), the defendant has not shown that this "substantially outweigh[s]" the probative value of George's opinion. Fed. R. Evid. 403.

### III. Cornelius Gorman.

Gorman's report identifies him as a life care planner. His report identifies various components of future medical and related care and provides ranges of cost for each, with a grand total of approximately $250,000. (Doc. 123, Exhibit 5).

Gorman is in Lafayette, Louisiana, while the plaintiff lives in St. Louis. The defendant recognizes that Gorman's estimates of costs for surgery and physical therapy represent those of the Lafayette area, and it questions whether Lafayette figures can be utilized in a case involving a St. Louis resident. (Doc. 106, ¶ 2; Doc. 115 at 12). The defendant has failed to show either that the law requires only St. Louis costs to be awarded or that the Court cannot permissibly extrapolate St. Louis costs from Lafayette costs. Without such a showing, Gorman's evidence cannot be excluded under *Daubert*.

With respect to the other costs identified by Gorman, the defendant identifies two reasons his report does not comply with Rule 26: (1) it does not explain the "source of the remaining costs"; and (2) it does not reflect the locality from which those costs are drawn. (Doc. 106, ¶¶ 2-3; Doc. 115 at 2, 12).[13]

The other costs identified by Gorman are for routine X-rays ($400 each) and MRIs ($2,500 each), routine orthopedic visits ($500-$600 each), a personal trainer ($40 per session), and a gym membership ($75 per month). The Court agrees that Gorman's

---

[13]The defendant acknowledges that the source of the costs of surgery and physical therapy was Dr. Cobb, one of the plaintiff's physicians, who lives in Lafayette. (Doc. 106, ¶ 2). As noted in text, the defendant also acknowledges that these costs are drawn from the Lafayette area. (*Id.*).

report provides no information as to the source of these costs, which information is part of the "basis and reasons" for his opinion that is required by Rule 26. Because the report in this respect does not satisfy Rule 26, the burden is on the plaintiff under Rule 37 to show that the failure is either substantially justified or harmless. Since the plaintiff has not addressed these matters, he has failed to meet his burden. Nor has he explained why a lesser sanction than exclusion should apply. Accordingly, Gorman will not be allowed to testify as to any costs other than for surgery and physical therapy.

## CONCLUSION

For the reasons set forth above, Borison is precluded from offering at trial any opinion that the positioning of the containment box was improper or that it contributed to the accident. Borison is also precluded from identifying at trial any standards, manuals or publications supporting his opinions beyond the Coast Guard circular and ASTM standard expressly identified in his report. To this extent, the defendant's motion in limine as to Borison, (Doc. 105), is **granted**. In all other respects, the motion in limine is **denied**.

For the reasons set forth above, the defendant's motion in limine as to George, (Doc. 107), is **denied**.

For the reasons set forth above, the defendant's motion in limine as to Gorman, (Doc. 106), is **granted** as to any costs other than for surgery and physical therapy. In all other respects, the motion in limine is **denied**.

DONE and ORDERED this 25th day of November, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE